# D. C. TARBELL *v.* THE CENTRAL PACIFIC RAILROAD COMPANY OF CALIFORNIA.

TENDER OF RAILROAD FARE.—In actions for breach of duty by a railroad company in not conveying a passenger, it is not necessary for plaintiff to allege in complaint a strict legal tender of his fare.

IDEM.—It is sufficient to allege that plaintiff was ready and willing and offered to pay such sum of money as the defendant was legally entitled to charge. The transportation and payment of the fare are contemporaneous acts.

IDEM.—If the passenger is ready and willing and offers to pay the legal fare when demanded by the Conductor of the train, the railroad company is bound to carry him, provided there is room in the cars and the passenger is a fit person to be admitted.

IDEM—LEGAL TENDER NOTES.—A railroad company is not justified in refusing to convey a passenger already admitted into its cars and the journey is commenced, who, upon demand of his fare, tenders only legal tender notes in payment.

IDEM.—In such case the contract is already made and in process of performance, and the kind of money to be paid is no longer an open question. Whether payment in coin might be demanded before the passenger is admitted into the cars and the journey is commenced, not decided.

IDEM.—Railroad fares are not taxes, and do not fall within the rule in *Perry* v. *Washburn*, 20 Cal. 318.

MEASURE OF DAMAGES.—Where no special damage was alleged or proved by plain-

HARVARD

L. I H

LIBRARY

tiff for the breach of a railroad passenger contract, and the evidence was only that he was put out of the defendant's car at a point about twelve miles from his destination, and five miles from the place of departure: *held,* that a verdict for five hundred dollars damages was greatly disproportionate to the injury proved, within the rule of *Aldrich* v. *Palmer,* 24 Cal. 513.

IDEM.—In such case: *held,* that one hundred dollars was ample compensation for the injury sustained, and that a new trial be granted, unless plaintiff elect to accept judgment for said sum.

APPEAL from the District Court, Fourteenth Judicial District, Placer County.

The charging portion of plaintiff's complaint was as follows:

"Plaintiff avers that on the 29th day of January, A. D. 1867, plaintiff was at the Town of Auburn, and was desirous of going thence to the Town of Colfax, on the line of defendant's said road, and did then and there, to wit: at the Town of Auburn, in said County of Placer, enter upon and into the regular passenger train of defendant, then and their passing between said Auburn and said Colfax, intending and contracting with defendant to be carried and conveyed by defendant as a passenger, for hire, from the Town of Auburn to the Town of Colfax, in said county. Plaintiff avers that he entered upon defendant's said train and car at the time and place set down in defendant's schedules and calls, and was a fit and proper person to be received thereon, and was received upon defendant's said car without hindrance or exception by defendant. Plaintiff further avers, that after having been so received at Auburn, as aforesaid, by defendant, on its said regular train and cars as a passenger aforesaid, defendant proceeded and did carry and convey plaintiff on said cars and train from Auburn aforesaid, on said road, and toward said Colfax, a distance of about five miles.

"Plaintiff further avers, that after receiving and conveying plaintiff as aforesaid for said distance of five miles, and having thereby, by receiving and conveying him, contracted to carry him to Colfax, defendant, by its agents, servants,

and employés, forcibly and scandalously, willfully and con-
temptuously, and to the great shame, scandal, and damage
of plaintiff, disregarding its duty as a common carrier for
hire, took hold of, wrongfully assaulted, and ejected plaintiff
from its said train then and there passing over said road from
Auburn to Colfax, and refused to carry him according to its
said contract. Plaintiff avers that before the said acts of
defendant in ejecting him from said train and cars, and
before the wrongful acts of defendant's servants as aforesaid,
he offered and tendered to defendant's servants and employés
payment in full for said passage and carriage from said
Auburn to Colfax. Plaintiff avers that defendant had full
room and accommodations to carry plaintiff from said point
at said time. Plaintiff avers that he was at said time pro-
ceeding from Auburn to Colfax in and about important
business, and by reason of defendant's said acts he was
unable to complete said journey, and was put to great loss,
inconvenience, and expense. Plaintiff further avers, that by
reason of the wrongful acts of defendant, its servants, agents,
and employés, as aforesaid, in assaulting and ejecting him
from said train and cars as aforesaid, that he was greatly
injured and wounded in his feelings, was scandalized and
injured in his name, and was greatly wronged and injured.
Plaintiff avers that by reason of the premises aforesaid he
has been greatly wronged, injured, and damaged by defend-
ant, to wit: in the sum of five thousand dollars, wherefore,"
etc.

The defendant demurred to the complaint on the ground,
among others, that it did not state facts sufficient to consti-
tute a cause of action, which was overruled. The defendant's
answer was a general traverse of the foregoing averments.

On the trial, which was by the Court with a jury, plaintiff
proved (the defendant objecting and excepting thereto for
irrelevancy and incompetency) that while on the defendant's
moving train of passenger cars, at a point about five miles
from Auburn, towards Colfax, he having entered the train at

Auburn, he tendered to the Conductor of the train, upon the usual demand being made of him for his ticket or fare, the legal passenger fare chargeable between the Auburn and Colfax Railroad Stations, in the legal tender notes of the United States. The Conductor refused to accept the payment so tendered, and demanded that it be made in the gold or silver coin of the United States, and on the failure and refusal of plaintiff to make the payment as required, caused the train to be stopped and plaintiff to be ejected therefrom. Plaintiff had a verdict and judgment for five hundred dollars damages. The defendant moved for a new trial upon a settled statement of the evidence and rulings of the Court on demurrer and the admission of evidence, on grounds of alleged error in law occurring at the trial, that the verdict and judgment were against law, and that the verdict was excessive. The motion was denied, and defendant appealed from the judgment and the order of the Court denying a new trial.

*Robinson, Ramage & Dunlap,* for Appellant.

The demurrer to plaintiff's complaint should have been sustained.

I. The plaintiff must allege in his complaint every fact that he is required to prove, and he will be allowed to prove nothing not alleged. (*Green* v. *Palmer,* 15 Cal. 411.) If it is necessary to prove the fact that the servant was authorized to receive the fare, it should be alleged in the complaint. It should have been alleged in the complaint that the plaintiff tendered a sum certain to the defendant, or its servants, and that such servants were authorized to receive it, and that they refused to do so. The evidence of the tender made by plaintiff was improperly admitted.

II. The evidence shows that it was made in legal tender notes. The Act of Congress provides that these notes shall be a legal tender in the payment of all debts, public and private, within the United States. The term " debt," as used

in the Act referred to, is defined in the case of *Perry* v. *Washburn*, 20 Cal. 318, 350. In that case the Court say that " a debt is a certain sum of money due upon contract, express or implied." That case was to compel the Collector to receive legal tender notes in payment of taxes, and the whole question was examined and the term " debt" defined as before stated. It is confidently believed that the case cited is conclusive of the case at bar. The railroad company was under no obligation to carry plaintiff till the fare was tendered, and on refusal to pay, the Conductor is authorized to put him off the cars. (Hittell, par. 874, Sec. 49.)

It is admitted that a railroad company, as a common carrier, is bound to carry all the properly behaved persons on the payment or tender of their fare. But before the transportation there is no " debt," within the meaning of the Act of Congress, as defined in *Perry* v. *Washburn*. Without a tender of the customary reward, there is no obligation existing on the part of the company to *transport*, and no *debt* on the part of the traveler.

Our State Legislature has fixed the limit as to the amount of fare that a railroad company may charge. But there is nothing contained in the Act of Congress nor in our Railroad Act, making these notes a legal tender so as to create the obligation to carry a passenger. The parties to such contracts stand upon the same footing with all other parties to contracts. They can fix their terms, provided they are within the limit prescribed, and when the passenger signifies his willingness to comply with these terms, the obligation to carry is created on the part of the company, and if the money is not collected in advance, then it becomes a debt on the part of the traveler to the company, at the end of the journey. The obligation to perform the service is one thing, and the obligation to pay for such service is another thing—one is properly denominated a duty, and the other a debt.

This duty extends to the whole community, or in favor of all who may desire to avail themselves of the benefit of it. The duty is discharged by rendering the service, and a debt

is discharged by the payment of it; and the last may be discharged in legal tenders—the duty, in no other way than rendering the service. No special damage to plaintiff was alleged in complaint, or proved on the trial. At most, plaintiff was only entitled to recover nominal damages. The verdict was manifestly excessive in amount, and should not be permitted to stand.

*Jo Hamilton*, for Respondent.

The demurrer to the complaint was properly overruled. (Redfield on Railways, 352 and note; Strong on Agency, Secs. 16, 52, 126, 133, 165.) Defendant, as a common carrier of passengers, was bound to receive and carry all persons of respectable character and good conduct, who applied for passage. (Angell on Carriers, Secs. 524, 531, 532, 590, 612.) An actual tender of the money was not necessary; *an offer to pay was sufficient.* (Angell on Carriers, Secs. 524, 590.) Again: the contract for carrying was made by defendant by *receiving and carrying* plaintiff part of the way; and having received plaintiff without objection, defendant was bound to complete the contract, unless plaintiff, by improper conduct, released them from that liability. (Angell on Carriers, Sec. 509.)

The damages are not excessive. There was a willful disregard of duty—a willful breaking of the law—an oppressive, aggravating outrage, without color of right; there was a gross insult put upon plaintiff; his rights were outraged, his person unlawfully assaulted, and his feelings willfully and unnecessarily wounded—all of which may properly be taken into account, as legitimate matters of aggravation.

By the Court, SANDERSON, J.:

In actions of this character it is not necessary that the plaintiff should allege a strictly legal tender of his fare. It was so held in the case of *Pickford* v. *The Grand Junction Railway Company*, 8 M. & Wels. 372. It is sufficient to allege that he was ready and willing and offered to pay the defendant such sum of money as it was legally entitled to charge. The transportation and payment of the fare are contemporaneous acts. If the plaintiff was ready and willing and offered to pay the legal fare when demanded by the Conductor of the train, the defendant was bound to carry him, provided there was room in the cars and the plaintiff was a fit person to be admitted. This results from the nature of the defendant's business, which makes it its duty to receive all persons as passengers who offer to become such, upon their offering to pay the legal fare. Whenever the performance of a duty or obligation is thus cast upon the one party in consequence of a contemporaneous act of payment by the other, it is sufficient if the latter is ready and willing to pay when the former is ready to undertake the duty. (*Rawson* v. *Johnson*, 1 East, 203.)

The complaint in this case might have been drawn with more directness and precision in this respect, but we are disposed to hold that the Court below did not err in overruling the demurrer. It would have been more certain had the amount of the fare been stated which the plaintiff offered to pay, and that the person to whom the offer was made was the Conductor in charge of the train; but we are not prepared to say that it is not sufficiently certain in it present form.

The point that the defendant was not bound to carry the plaintiff because the fare which he offered to pay was in legal tender notes, is not tenable. Conceding that a statute authorizing defendant to demand coin in payment of fare would be constitutional, no such statute exists, and there being no contract in writing stipulating for coin, we find nothing in the

case which takes it out of the operation of the Act of Congress in relation to legal tender notes.   Railroad fares are not taxes, and do not fall within the rule in *Perry* v. *Washburn,* 20 Cal. 318.

Whether the defendant could have legally exacted payment in coin before the plaintiff was admitted into the cars and the journey commenced, is a question not involved in this case, and upon which we express no opinion.   Having received the plaintiff and proceeded several miles upon the journey, the defendant must be held to have consented to receive in payment of the fare any good and lawful money which the plaintiff might tender when called upon for payment.   The kind of money to be paid had then ceased to be an open question, for the contract was already made and in process of performance.

The verdict, however, was excessive.   No special damages were alleged or proved.   It is not pretended that this is a case for punitive damages, or that the business of the plaintiff suffered in any way by reason of his not being taken to Colfax.   It does not appear whether the plaintiff proceeded on to Colfax or returned to Auburn after he was put out of the cars, or, whichever he did, if he did either, that he was put to any expense in doing it.   Whether the plaintiff was going to Colfax upon urgent business or merely for pleasure, is not shown.   In short, there is no evidence in the transcript which has any bearing upon the question of damages except the naked fact that he was put out of the cars at a point ten or twelve miles from the place of his destination, and about five from the place of his departure.   Such being the only evidence bearing upon the question, we think the verdict greatly disproportionate to the injury proved, within the rule in *Aldrich* v. *Palmer,* 24 Cal. 513.

A new trial must be granted, unless the plaintiff elects, within fifteen days, to take a judgment for one hundred dollars, which sum we think amply sufficient compensation for the injury which he sustained.

So ordered.